1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                            ----oo0oo----

11

12   BRIAN BROWN,                      No. 2:22-cv-02128 WBS DB

13              Plaintiff,

14        v.                           MEMORANDUM AND ORDER RE:
                                       MOTION FOR SUMMARY JUDGMENT
15   CEMEX, INC.; CEMEX CONSTRUCTION
     MATERIALS PACIFIC, LLC; and DOES
16   1 to 10,

17              Defendants.

18

19                            ----oo0oo----

20        Plaintiff Brian Brown brings three claims under the

21   Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et

22   seq., and two claims under California's Fair Employment and

23   Housing Act ("FEHA"), Cal. Gov. Code § 12900 et seq., all of

24   which relate to allegations that defendant CEMEX Construction

25   Materials Pacific, LLC[1] ("Cemex") refused to hire plaintiff

26   _____

27        [1]    Plaintiff initially also sued CEMEX, Inc., which is the
     parent corporation of CEMEX Construction Materials Pacific, LLC.
     The parties now agree that the parent entity is not a proper
28   party to this action.  (See Docket No. 25-1 at 30-31; Docket No.

                                    1

1  because of his disability.  (Compl. (Docket No. 1).)  Defendant
2  now moves for summary judgment on all claims.  (Mot. (Docket No.
3  25-1).)

4          As the parties are familiar with the relevant facts,
5  procedural history, and legal standard, the court will not recite
6  them in detail here.

7  I.   Evidentiary Objections

8          The court first addresses the serial relevance,
9  foundation, and hearsay objections that defendant raises against
10 plaintiff's witnesses' declarations and accompanying documents.
11 (See Docket Nos. 37, 38.)

12         As a preliminary matter, the court will disregard any
13 objections that are duplicative of the summary judgment standard.
14 Under Federal Rule of Evidence 401, evidence is relevant if it
15 "has any tendency to make a fact more or less probable" and that
16 fact "is of consequence in determining the action."  Fed. R.
17 Evid. 401.  The action before the court now is a motion for
18 summary judgment.  On summary judgment, the court determines
19 whether the evidence presented, viewed in the light most
20 favorable to the non-moving party, creates a "genuine dispute as
21 to any material fact" that must be resolved at trial.  Fed. R.
22 Civ. P. 56(a).  The court must therefore consider, and only
23 consider, evidence bearing on (1) facts that are (2) material.
24 If the evidence offered does not bear on a material fact (e.g.,
25 comprises baseless speculation, bears on a legal conclusion, or

26

27 35 at 6.)  Accordingly, the court will dismiss all claims as
   asserted against CEMEX, Inc. with prejudice.
28

bears on a fact not necessary to dispose of any claim), it is by definition not relevant to the present action for summary judgment.  <u>Sandoval v. Cnty. of San Diego</u>, 985 F.3d 657, 665 (9th Cir. 2021) ("[O]bjections for relevance are generally unnecessary on summary judgment because they are "'duplicative of the summary judgment standard itself.' . . . [P]arties briefing summary judgment motions would be better served to 'simply <u>argue</u>' the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections.") (citing <u>Burch v. Regents of Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (Shubb, J.)).  Additionally, "if the contents of a document can be presented in a form that would be admissible at trial -- for example, through live testimony by the author of the document -- the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment."  <u>Id.</u> at 666.

The court will therefore overrule defendant's relevance, foundation, and hearsay objections.  Plaintiff's, Haymore's, and Webdell's declarations -- the declarations to which defendant objects -- all state that the respective declarant has personal knowledge of all of the facts comprising his declaration and supporting documents included with it. (Docket Nos. 35-8 ¶ 1; 35-7 ¶ 1; 35-15 ¶ 1.)  There is therefore no concern that this evidence cannot be presented in admissible form at trial.  This is especially true regarding plaintiff's notes recounting his own interview; the court can envision no circumstances under which plaintiff would, as a legal matter, be barred from offering his personal, percipient testimony about

1    what he said and heard during his interview were the case to

2    proceed to trial.  Absent any challenges to the substantive

3    authenticity or reliability of these declarations or documents,

4    the court will not categorically exclude them from its analysis

5    of defendant's motion because of the form in which they are

6    currently presented.[2]

7    II.  Disability Discrimination Under ADA and FEHA (Claims 1-4)

8            Both parties agree that the McDonnell Douglas burden-

9    shifting framework for analyzing intentional discrimination

10   claims, first set forth by the Supreme Court in McDonnell Douglas

11   Corp. v. Green, 411 U.S. 792 (1973), applies to plaintiff's

12   disability discrimination claims brought under the ADA and FEHA.

13   (Mot. at 20-21 & n.5; Opp'n (Docket No. 35) at 4-5.)  See Kannan

14   v. Apple, Inc., No. 20-17211, 2022 WL 3973918, at *1 (9th Cir.

15   Aug. 31, 2022) (applying McDonnell Douglas framework to ADA and

16   FEHA claims); Schechner v. KPIX-TV, 686 F.3d 1018, 1023 (9th Cir.

17   2012) ("California applies the McDonnell Douglas burden-shifting

18   framework and other federal employment law principles when

19   interpreting the FEHA.").

20           This court has previously explained how the McDonnell

21   Douglas framework applies in the summary judgment context: "Under

22   [McDonnell Douglas], the plaintiff must first establish a prima

23   facie case, which requires the employee to show he or she (1)

24   suffered from a disability, (2) was otherwise qualified to do his

25

26           [2]   Defendant's objections regarding plaintiff's failure to
     provide the court with complete deposition transcripts are moot,
27   as all of the relevant transcripts have since been lodged in
     complete form with the court.  (See Docket Nos. 24, 40.)
28

4

1    or her job, and (3) was subjected to adverse employment action

2    because of the disability.  If the plaintiff establishes a prima

3    facie case, the burden shifts to the employer to rebut the

4    presumption by producing admissible evidence, sufficient to raise

5    a genuine issue of fact that its action was taken for a

6    legitimate, nondiscriminatory reason.  If the employer sustains

7    this burden, the presumption of discrimination disappears, and

8    the plaintiff must then show the employer's proffered reasons as

9    pretexts for discrimination, or offer any other evidence of

10   discriminatory motive."  Thomsen v. Georgia-Pac. Corrugated, LLC,

11   190 F. Supp. 3d 959, 969 (E.D. Cal. 2016) (citations and

12   quotations omitted).

13           Here, plaintiff fails to establish his prima facie case

14   because the court, in viewing the record in a light most

15   favorable to plaintiff, cannot find any evidence that suggests a

16   causal link between plaintiff's disability and defendant's

17   ultimate decision not to hire him.  While "[t]he burden of

18   establishing a prima facie case of disparate treatment is not

19   onerous," plaintiff still needs to show that "[]he applied for an

20   available position for which []he was qualified, but was rejected

21   under circumstances which give rise to an inference of unlawful

22   discrimination."  Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S.

23   248, 253, (1981)[3]; see also Phipps v. Gary Drilling Co., 722 F.

24   _____

25           [3]   The Burdine Court further elaborates on the
     significance of the prima facie case: "The prima facie case
26   serves an important function in the litigation: it eliminates the
     most common nondiscriminatory reasons for the plaintiff's
27   rejection.  [. . .]  [T]he prima facie case raises an inference
     of discrimination only because we presume these acts, if
28   otherwise unexplained, are more likely than not based on the

1    Supp. 615, 619 (E.D. Cal. 1989) (Coyle, J.) ("This initial

2    burden, however, is not an insubstantial one -- the prima facie

3    case must be supported by evidence that gives rise to an

4    inference of unlawful discrimination.  Failure to produce

5    specific facts that establish the existence of a prima facie case

6    renders a grant of summary judgment appropriate.  Mere assertions

7    of discriminatory motive and intent are inadequate.  [. . .]  In

8    other words, the evidence must be sufficient to identify actions

9    which, if unexplained, give rise to an inference of

10   discriminatory conduct.") (citations and quotations omitted).

11          Plaintiff's own account of the interview process, taken

12   at full face value, fails to provide any circumstantial evidence

13   even hinting at discriminatory intent.  Plaintiff's interview

14   notes, which postdate the actual interview by ten months, recount

15   the detailed answers that he alleges to have given in response to

16   the panel's interview questions; directly challenge the veracity

17   of Ramirez's contemporaneous notes on plaintiff's answers;

18   express feeling positive about his prospects immediately

19   thereafter; and finally speculate that "I AM LEFT TO WONDER IF

20   THE FACT THAT I HAVE A DISABILITY AUTOMATICALLY PLACED ME IN THE

21   'TROUBLE MAKER' CATEGORY.  PERHAPS, CEMEX SIMPLY DID NOT WANT TO

22   DEAL WITH A PERSON WHO MAY REQUIRE ACCOMODATIONS IN THE WORK

23   PLACE."  (Docket No. 35-9 at 3.)  However, plaintiff offers

24   nothing further to substantiate that suspicion.  (Cf. Docket No.

25   25-3 at 45 (Q: "During the interview process with CEMEX INC., did

26

27   consideration of impermissible factors.  Id. at 253-54 (citations
     and quotations omitted) (emphases added).

28

anyone in a hiring or management level position make any comment
to you, regardless of how seemingly insignificant, regarding your
disability and/or their impression of your ability to do your
job?" A: "NO").)

Plaintiff also seems to suggest that his low score is
itself circumstantial evidence of discriminatory intent: "The
fact [that defendant] gave [plaintiff] a low score in his
interview is not a cure-all for discrimination.  It _is_ the
discrimination."  (Opp'n at 9.)  However, this not only begs the
question; it misstates the relevant law.  Setting aside possible
subjective disagreements about how plaintiff performed, even the
employer's own objectively incorrect application of its internal
process, is, without more, insufficient to establish the causal
element of a prima facie discrimination case.  See <u>Jantz v.</u>
<u>DeJoy</u>, No. 222CV04702SVWRAO, 2023 WL 3555493 (C.D. Cal. Apr. 6,
2023) ("[E]ven if Defendant had <u>incorrectly</u> applied its own
hiring standards or should have recognized that Plaintiff's
degrees and trainings merited a score higher than 0[], Plaintiff
cannot simply show the employer's decision was <u>wrong</u>, <u>mistaken</u>,
or unwise [to establish a prima facie case of discrimination].")
(citations and quotations omitted) (emphases added); <u>Weil v.</u>
<u>Citizens Telecom Servs. Co., LLC</u>, 922 F.3d 993, 1003 (9th Cir.
2019) ("[T]he plaintiff still must produce evidence, not just
pleadings or argument.  An employee's self-assessment of his
performance, though relevant, is not enough on its own to raise a
genuine issue of material fact.").

As a final resort, plaintiff presents discrepancies in
the record relating to whether Mr. Ramirez knew of plaintiff's

7

disability prior to the interview as themselves evidencing discriminatory intent.  (See Opp'n at 10-11.)  The discrepancies do no such thing.  First, an employer's mere knowledge of an employee's disability does not, without more, establish a prima facie case of discrimination.[4]  Second, defendant's actual knowledge of plaintiff's disability during the interview process is not in dispute -- neither party disputes that at least Mr. Skulick, the Vice President of Operations for Cemex, knew about plaintiff's disability beforehand.  (See Docket No. 25-3 at 74.) And third, even if the court were to grant plaintiff's assertions that Mr. Ramirez visited Teichert prior to the sale, met plaintiff, noticed his prosthetic during that meeting, recalled both this encounter and the fact of plaintiff's disability leading up to plaintiff's interview, and subsequently lied about all of this at deposition (Pl.'s Additional Undisputed Material Facts (Docket No. 35-1) Nos. 40-55), all that plaintiff would achieve is to undermine Mr. Ramirez's credibility as a fact witness.  Whether or not Mr. Ramirez lied about the pre-sale visit is immaterial to plaintiff's instant claims because nothing in plaintiff's account of that visit and his interactions with

---

[4]    See, e.g., Chisolm v. 7-Eleven, Inc., 383 F. Supp. 3d 1032, 1050-52 (S.D. Cal. 2019), aff'd, 814 F. App'x 194 (9th Cir. 2020) (summary judgment granted for defendant employer, as prima facie case not established even though disability disclosed during interview); Mattsson v. Home Depot, Inc., No. 11CV0533 AJB BLM, 2012 WL 2342948, at *2-3 (S.D. Cal. June 20, 2012) (termination a day after learning of medical condition not enough to establish prima facie case).  Cf. McInteer v. Ashley Distribution Servs., Ltd., 40 F. Supp. 3d 1269 (C.D. Cal. 2014) (prima facie case established circumstantially by evidence showing, e.g., failure to apply standardized progressive discipline policy).

1  Cemex personnel, like the rest of plaintiff's case, suggests any
2  kind of discriminatory intent that defendant brought to bear on
3  its decision not to hire him.

4        Accordingly, the court will grant summary judgment for
5  defendant on plaintiff's first four claims for disability
6  discrimination under the ADA and FEHA.

7  III. <u>Failure to Engage in FEHA Interactive Process</u> (Claim 5)

8        Both parties agree to the dismissal of plaintiff's
9  fifth claim, which alleges that defendant failed to participate
10 in the FEHA's interactive process.  (<u>See</u> Mot. at 19-20; Opp'n at
11 6; Reply (Docket No. 36) at 7-8.)  Accordingly, the court will
12 dismiss this claim with prejudice.

13        IT IS THEREFORE ORDERED that defendant's motion for
14 summary judgment (Docket No. 25) be, and the same hereby is,
15 GRANTED.  The clerk of court shall enter judgment for defendant
16 and close the case.

17 Dated:  July 9, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

9